Helen C. Maine, Appellee, v. Chicago City Railway Company, Appellant.

Gen. No. 14,599.

1. NEGLIGENCE—*when evidence in collision case establishes.* Where the injury to the plaintiff occurred by reason of a motor car being run upon a railroad track, and being there struck by a railroad engine, the evidence of such manner of occurrence, coupled with the testimony of the motorman to the effect that he knew that it was his duty to bring his car to a full stop within a safe distance of the railroad crossing, establishes a *prima facie* case of negligence in favor of the plaintiff, which, under the evidence in this case, it was held was not rebutted.

2. VERDICTS—*when not excessive. Held,* in an action on the case for personal injuries, that a verdict for $3,000 was not excessive, where the evidence tended to show that as a result of an accident both bones in one of the plaintiff's feet and arms were broken—the ulna near the elbow and the radius near the wrist; that the first union of the ulna was not satisfactory and the union was broken up and the bone re-set; that, in consequence, the arm is deformed and its motion limited and that these conditions are permanent; that other serious effects followed, and that the sum of $700 was expended for medical attendance and nursing.

Action in case for personal injuries. Appeal from the Circuit Court of Cook county; the Hon. MERRITT W. PINCKNEY, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1908. Affirmed. Opinion filed June 4, 1909.

**Statement by the Court.** In an action on the case for personal injuries alleged to have been sustained by the plaintiff through the negligence of the defendant, plaintiff had judgment for $3,000, and the defendant appealed.

The defendant operated in Centre avenue, a north and south street, a double track electric street railway. A switch track of the Pan Handle railroad company crossed defendant's tracks at right angles and at grade at a point 303 feet south of Fifty-eighth street. Plaintiff was a passenger on a south bound car of the defendant, and when the car reached the switch track it was struck by an engine going west on that track, and as a result of such collision plaintiff sustained the injuries complained of. The grounds of reversal urged are, that the verdict is against the weight of the evidence, and that the damages are excessive.

WILLIAM J. HYNES, FRANKLIN B. HUSSEY and WATSON J. FERRY, for appellant; JOHN R. HARRINGTON, of counsel.

QUIN O'BRIEN and LAWRENCE W. POTTER, for appellee.

MR. JUSTICE BAKER delivered the opinion of the court.

The negligence alleged in the declaration is, that the defendant so negligently ran and managed the car in which plaintiff was a passenger that it ran upon the track of a steam railroad company, and there was struck by an engine on said track, and that in and as a consequence of such collision plaintiff was injured.

The motorman in charge of defendant's car testified that he knew that it was his duty to bring his car to a full stop within a safe distance of the railroad

crossing. We think that this evidence, with the evidence that the car did not stop before reaching the switch track but ran upon that track and was there struck by an engine, and that in and as a result of such collision plaintiff was injured, made a *prima facie* case in favor of the plaintiff and against the defendant.

The contention of appellant is that the failure to stop the car before it ran upon the switch track was not attributable to any act or default of the defendant or its servants, but to a cause that the highest degree of care could not have obviated. The testimony relied on in support of this contention is testimony of witnesses for the defendant which tended to show that the speed of the car, after leaving Fifty-eighth street, was ten miles per hour; that at that speed, with the track in the condition it was on the day of the accident, a car could be stopped in about 175 feet; that when the motorman turned off the power and set the brake to stop the car before reaching the switch track, the brake locked the wheels, so that they did not revolve but slid on the tracks; that the brake became stuck so that the motorman was unable to release it or prevent the wheels from sliding on the track; that he applied sand to the rails; that when he found the brake was stuck he reversed the power but was unable to stop the car before it reached the switch track; that the brake became stuck because the wood in the disc got wet from the snow which covered the ground, and as a consequence became swollen; that the brakes on the cars were properly constructed, of proper material; that the brake became stuck without the fault or negligence of the defendant. To support this contention it devolved upon the defendant to prove that the motorman began his efforts to stop the car a sufficient distance from the crossing to enable him, if the appliances for stopping the car worked properly, to stop the car at a safe distance from the railroad crossing, and that he set the brake properly. The witnesses called by the defendant testified, as has been said, that in the then condition of the track a distance of 175 feet

was required to stop the car. The motorman testified that he shut off the power when he was 200 feet from the crossing; that he at once set his brake and at the same time applied sand to the track with his foot. On his cross-examination he testified that after the accident he saw sand on the track. Asked how far back the sand extended he answered, seventy or eighty feet from the crossing. The conductor testified that the car, when the motorman began his efforts to stop it, was about half way between Fifty-eighth street and the track, and therefore was only about 150 feet from the track. Wyman, a witness called for the defendant, testified that he stood by the motorman on the front platform, and that when the motorman turned off the power the car was but seventy-five or eighty feet from the switch track; that the front end of the car was twenty-five or thirty feet from the switch track when the reverse current was put on; that he had ridden on the front platform of the car from Twenty-sixth street and had noticed that the car wheels slid whenever the motorman tried to make a stop.

From all the evidence we think the jury might properly find that the car wheels had become locked and slid in making previous stops. It was the duty of the motorman, in determining when to begin to stop his car for the crossing, to take into account the then condition of the track and the fact that his car wheels had become locked and slid in making previous stops. From the evidence we think the jury might properly find that the motorman did not begin his efforts to stop the car until it was within seventy-five or eighty feet of the crossing.

We find no evidence tending to show the wet and swollen condition of the disc, if it was wet and swollen, contributed in any manner to the locking and consequent sliding of the wheels. We think that the jury might, from the evidence, properly find that the wheels became locked and were made to slide by the manner in which the brake was set by the motorman, and the most that can be said as to effects of the wet and

swollen condition of the disc is that such condition prevented the motorman from releasing the brake in order to set it again.  We think that from the evidence the jury was not bound to find as a fact that the sole cause of the collision was the wet and swollen condition of the disc, but might properly find that the motorman was guilty of negligence in failing to begin his efforts to stop the car at a proper, sufficient and safe distance from the switch track, and also in setting the brake in such a manner as to lock the wheels and cause them to slide, and that such negligence directly contributed to cause and bring about the collision between the street car and engine in and by which collision the plaintiff was injured.  We do not think that on the evidence in this record the verdict can be held to be against the evidence.

In the collision both bones in one of the plaintiff's feet and arms were broken, the ulna near the elbow and the radius near the wrist.  The first union of the ulna was not satisfactory and the union was broken up and the bone re-set.  The arm is deformed and its motion limited, and these conditions are permanent. Plaintiff suffered other injuries to her head and back, and the evidence tends to show that during the four years which elapsed between her injury and the trial she had serious nervous symptoms and troubles; that during all that time she suffered and probably will always suffer from neurosis or psychoneurosis.  She was a teacher, and her loss in salary and her expenditures for medical attendance and nursing amounted to about $700.  Whether her nervous condition subsequent to her injury was the result of the injury was a question for the jury on which their verdict, on the evidence, must be held conclusive.  We do not think that the trial court erred in refusing to disturb the verdict on the ground that the damages were excessive.

Finding no error in the record, the judgment of the Circuit Court will be affirmed.

*Affirmed.*